Clerk's Office
Filed Date: 8/9/2021

U.S. DISTRICT
COURT
EASTERN DISTRICT
OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ERIC HUNT,

                              Plaintiff,                       NOT FOR PUBLICATION

               v.                                             **MEMORANDUM & ORDER**
                                                              18-CV-7262 (MKB)
CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC.,

                              Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

     Plaintiff Eric Hunt commenced the above-captioned action on December 20, 2018,

against his employer, Defendant Consolidated Edison Company of New York, Inc., pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York

State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), the New York City

Human Rights Law, N.Y.C. Admin Code § 8-101 *et seq.* (the "NYCHRL"), and 42 U.S.C.

§ 1981.[1]  (Compl., Docket Entry No. 1.)  On April 5, 2019, Plaintiff filed an Amended

Complaint with the same claims.  (Am. Compl., Docket Entry No. 12.)  On December 5, 2019,

Plaintiff filed a Second Amended Complaint ("SAC").  (SAC, Docket Entry No. 23.)  Plaintiff

alleged that Defendant discriminated against him based on his race by preventing him from

applying for or obtaining a promotion, and retaliated against him by failing to promote him after

he complained of discrimination.  (SAC ¶¶ 65–106.)

---

     [1]  In 2016, Plaintiff, proceeding *pro se*, unsuccessfully sued Defendant for discrimination,
failure to promote, and retaliation in violation of Title VII.  *Hunt v. Con Edison Co. N.Y.C.*, No.
16-CV-677, 2017 WL 6759409 (E.D.N.Y. Dec. 29, 2017), *on reconsideration*, 2018 WL
3093970 (E.D.N.Y. Jun. 22, 2018) ("*Hunt I*").

Defendant moved to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, as time-barred, and as barred by *res judicata*.[2]  On September 25, 2020, the Court heard argument, dismissed the SAC in part as time-barred and barred by *res judicata*, and otherwise reserved decision as to Plaintiff's remaining failure to promote and retaliation claims that were not disposed of at the hearing.  (Min. Entry dated Sept. 25, 2020.)  For the reasons set forth below, the Court grants in part and denies in part Defendant's motion to dismiss.

## I.  Background

The Court assumes the truth of the factual allegations in the SAC for purposes of this Memorandum and Order.  The Court also assumes familiarity with the facts of the case as set forth in *Hunt I* and provides on a summary of the relevant facts.

Defendant hired Plaintiff, an African-American man, as a mechanic in 1985, and promoted him to Lead Mechanic in 2001.  (SAC ¶¶ 14–16.)  Plaintiff alleges that Defendant has failed to promote him to a managerial or supervisory position.[3]  (*Id.* ¶ 18.)

---

[2]  (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 28; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 29; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 34.)

[3]  Plaintiff also alleges discriminatory acts by Defendant and Defendant's employees that took place between 2001 and 2004.  (*See, e.g.*, SAC ¶¶ 25–26 (difficulty obtaining key and uniform parka when non-African-American employees readily received those items); *id.* ¶ 28 (evaluations targeting either Plaintiff or all African-American employees "by providing them with fake . . . leaks to respond to"); *id.* ¶¶ 26, 29–31 (false allegation of falsifying company documents, unwarranted discipline, and being repeatedly followed home in a company vehicle).)  Because these allegations are not pertinent to Plaintiff's remaining claims, the Court does not include them in its recitation of facts.

### a. Failure to promote allegations

Plaintiff contends that Defendant's employees are "normally" promoted when sponsored by a supervisor who "initiate[s] the promotion process" within a given department.  (*Id.* ¶ 38.) Because "upper management often interfere[s] in this process, minority employees such as [Plaintiff] are usually not selected for sponsorship."  (*Id.*)  Employees can also apply to posted positions in other departments.  (*Id.* ¶ 39.)  However, minority employees are "often prohibited . . . from actually applying" due to "frivolous disciplinary actions" that can "cause an employee to be prohibited from advancement for up to one year," and then are "maintained on an employee's permanent record, . . . tarnishing that employee's record and chances of selection for promotion."  (*Id.*)  To the best of Plaintiff's knowledge, Defendant has promoted *no* African-American mechanics to management since Plaintiff began his employment in 1985.  (*Id.* ¶¶ 14, 40.)  "[T]he majority of the minority employees" of Defendant have been "passed over in the process of title advancement" and "multiple minority employees" have performed the duties of a more senior position than their title reflected before leaving "in search of career advancement opportunities."  (*Id.* ¶ 32.)  Instead of promoting African-American employees to management and supervisory positions, Defendant has promoted "less-experienced and less-senior Caucasian mechanics."  (*Id.* ¶¶ 32–33.)

Plaintiff is the most senior employee in his department and has trained ten of eleven employees who were promoted to managerial positions between 2012 and 2016.[4]  (*Id.* ¶¶ 37, 42.) Those employees have come to him for advice on "multiple occasions" because he has experience that they do not.  (*Id.* ¶¶ 36–37, 42.)  "[Y]ear after year," Defendant has issued

---

[4]  Plaintiff names these employees and provides the dates on which they were hired, but does not specify their race or the dates on which they were promoted.  (SAC ¶¶ 35–36.)

Plaintiff "multiple unwarranted citations" that have had the effect of barring him from applying for a supervisor position.  (*Id.* ¶¶ 43–44, 64.)  "At the end of each probationary period, Defendant frivolously disciplines [Plaintiff] in order to circumvent promoting him . . . ."  (*Id.* ¶ 44.)  As of the date the SAC was filed, Defendant was continuing this practice.  (*Id.* ¶ 64.)

### b.   Retaliation allegations

In February of 2012, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination.  (*Id.* ¶ 45.)  Plaintiff contends that before filing the EEOC charge, he had "passed all examinations and received positive performance reviews."  (*Id.*)  Defendant then "commenced a campaign of frequent accusations of performance deficiencies . . . , unwarranted disciplinary citations[,] and suspensions leading to probationary periods."[5]  (*Id.* ¶ 46.)

In 2015, Defendant adopted National Gas Association ("NGA") guidelines for testing and certification.  (*Id.* ¶ 47.)  At that time, Plaintiff and two other employees in the company obtained the certification, and although more employees obtained their certification "[a]t a later date," only Plaintiff and one other employee were qualified "to perform gas tests in the United States." (*Id.*)  The NGA gave Plaintiff a certification card, but "Defendant refused to acknowledge [the] card and forced the [NGA] to fax a second confirmation before recognizing his accomplishment."  (*Id.*)  This "unwarranted" delay harmed Plaintiff because "certification is directly related to [his] qualifications and financial compensation."  (*Id.*)

In January of 2016, Plaintiff's group — including "two shop stewards who vigorously protected workers' rights" — was transferred to a "problematic" department.  (*Id.* ¶ 48.)  An unnamed employee told Plaintiff, "How else do you get rid of two to three people you don't like

---

[5]  Plaintiff does not allege when this retaliatory activity began.

without making it look like you're trying to get rid of those people?  You move the entire

group." (*Id.*)  In 2016, Plaintiff was subjected to "short-changed paychecks, time sheet

destruction, and overtime denial without explanation," which provided "grounds to issue

[Plaintiff] frivolous disciplinary citations" and place him on probation. (*Id.* ¶ 49.)  Plaintiff

alleges that these acts were in retaliation for filing the 2012 EEOC charge. (*Id.*)

In August of 2016, Plaintiff filed a *pro se* action against Defendant, alleging employment

discrimination. (*Id.* ¶ 50.)

In December of 2016, Defendant assigned Plaintiff to complete a two-day Operator

Qualification test, which consisted of a day-long Construction examination and a day-long Gas

Distribution Services examination. (*Id.*)  "Contrary to policy," Defendant gave Plaintiff only one

week to study, then switched the topic of the first day's examination from Construction to Gas

Distribution Services without warning. (*Id.* ¶¶ 51–52.)  Plaintiff failed the Gas Distribution

Services examination. (*Id.* ¶ 53.)  Despite Defendant's policy to the contrary, the proctor did not

halt the examination after Plaintiff failed a "[c]rucial [i]tem" and did not review the examination

with Plaintiff. (*Id.*)  The next day, Plaintiff took the Construction examination with a different

proctor and passed. (*Id.* ¶ 54.)  The proctor "attempted to review the Gas Distribution Services

exam[ination] [with Plaintiff] but discovered that [the previous proctor] failed to upload the

required documentation." (*Id.*)  On December 18, 2016, Defendant assigned Plaintiff to

Construction remediation training even though he passed that examination. (*Id.* ¶ 55.)  Plaintiff

alleges that the assignment was an "attempt[] to portray [him] as an unqualified employee based

upon [Defendant's] racial and retaliatory animus." (*Id.*)

In February of 2017, Plaintiff was given a new examination administered by the NGA. (*Id.* ¶ 56.)  Of the thirty-five sections Plaintiff completed, he failed five non-critical sections.[6] (*Id.*)  Defendant did not give Plaintiff an opportunity to retake a practical exam, unlike other employees of unspecified race, and told Plaintiff that testing was "halted until further notice." (*Id.*)  On February 17, 2017, Defendant transferred Plaintiff to Gas Distribution Services remediation, where he had to "undergo inapplicable training with [more junior employees], all of whom [he] trained," rather than complete "relevant" remedial work.  (*Id.* ¶ 57.)  Plaintiff waited longer than the typical "one to two weeks" for remediation and was denied "overtime training to assist a mechanical trainer" in the meantime, "in furtherance of [Defendant's] discriminatory and retaliatory animus."  (*Id.* ¶ 58.)  On March 20, 2017, Plaintiff was "finally" assigned to proper remediation instruction.  (*Id.* ¶ 59.)  In March of 2017, another proctor discovered that eight of Plaintiff's eleven examination records had been "purged" from the system and that the proctor who had administered those examinations failed to maintain notes in violation of Defendant's policy.  (*Id.* ¶ 60.)  Plaintiff contends that "[d]ue to Defendant's arbitrary testing practices of failing anyone at their discretion," he "was required to take" computerized examinations administered by a third party that covered the same subject areas as Defendant's examinations. (*Id.* ¶ 61.)  The computerized examinations were facilitated by the NGA, not by Defendant, so Defendant could not "manipulat[e] the testing protocol."  (*Id.*)  Although supervisors who worked for Defendant used the results of the computerized examinations "to determine [Plaintiff's] actual field qualifications when his Operator Qualification test results were unavailable for review due to Defendant's intentional deletion of the information," the results

---

[6]  Plaintiff writes that the NGA "increased the exam from [twelve] sections to [seventy-five] sections with increased difficulty."  (SAC ¶ 56.)

"entirely supersede[d] Defendant's Operator Qualification."  (*Id.*)  In all, Plaintiff was

"overlooked for approximately seven months" and then "reinstated to field duty without an

Operator Qualification," which "directly affected [his] qualifications for promotion."  (*Id.*)

On June 21, 2017, Plaintiff filed an EEOC charge alleging discrimination, retaliation, and

failure to promote.  (*Id.* ¶¶ 5, 62.)  Plaintiff received a right-to-sue letter dated September 18,

2018, and filed the Complaint in this Court on December 20, 2018, less than ninety days from

the (unspecified) day he received it.  (*Id.* ¶¶ 6–9.)

c.  **Proceedings in this Court**

On February 18, 2020, Defendant moved to dismiss the SAC, arguing that (1) Plaintiff's

claims that could have been raised in his previous lawsuit are barred by *res judicata*, (2) his Title

VII claims based on events before August 25, 2016, and his non-Title VII claims based on events

before December 20, 2015, are barred by the statute of limitations, and (3) his timely allegations

fail to give rise to a claim.  (Def.'s Mem. (citing *Hunt I*); Def.'s Reply.)

Plaintiff opposed the motion, arguing that (1) the failure to promote claim in *Hunt I* was

dismissed without prejudice, therefore that claim and related claims are not barred by *res

judicata*, (2) his claims concern a pattern of discrimination, and are therefore not barred by the

statute of limitations, and (3) the unjustified discipline he suffered caused him to lose

opportunities for promotion, and the proximity of that discipline to his EEOC charges and

federal court complaints supports a retaliation claim.  (Pl.'s Opp'n.)

The Court heard oral argument from the parties on September 25, 2020, and for the

reasons stated on the record, found that (1) claims that could have been brought or were brought

in *Hunt I*, except for his Title VII failure to promote claim, were barred by *res judicata*, and

(2) Plaintiff's Title VII claims arising prior to August 25, 2016, NYSHRL claims arising prior to

September 22, 2014, and section 1981 claims arising prior to December 20, 2015 were time-barred.[7]  (Min. Entry dated Sept. 25, 2020.)  The Court now addresses Defendant's remaining failure to promote and retaliation arguments.

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[7]  Plaintiff's NYCHRL claims are not time-barred because Plaintiff alleges that he has been denied a promotion as part of a longstanding pattern of discrimination against employees who share his race.  *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *39 (S.D.N.Y. Oct. 24, 2020) (holding that under the NYCHRL, "[o]therwise time-barred discrete acts can be considered timely 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice'" (quoting *Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, No. 16-CV-4897, 2017 WL 2258374, at *9 (S.D.N.Y. May 22, 2017) (citation omitted), report and recommendation adopted, 2017 WL 2709747 (S.D.N.Y. June 22, 2017))); *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250–51 (E.D.N.Y. 2012) (applying the "more generous[] continuing violations doctrine" to the plaintiff's NYCHRL claim where a defendant "[was] alleged to have discriminated against [the] plaintiff by subjecting her to an inordinate number of formal and informal observations, and by giving her negative ratings following those observations").

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this

tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### b.   Plaintiff fails to state a failure to promote claim

Defendant argues that Plaintiff fails to state a failure to promote claim because he has not

described "any promotional opportunity after" the events described in *Hunt I* — that is, after

August 22, 2016 — "to which he would have applied but for the alleged discrimination."  (Def.'s

Mem. 9–12; Def.'s Reply 1.)

Plaintiff argues that "to date," Defendants have not promoted him and have promoted

people that he trained, none of whom are African-American.  (SAC ¶¶ 34–36, 40; Pl.'s Opp'n 9.)

In addition, Plaintiff argues that minority candidates are underrepresented within the company

and that Defendant's discrimination against a coworker with a disability demonstrates

Defendant's animus "to[ward] minority employees."  (SAC ¶¶ 19, 25, 36; Pl.'s Opp'n 9.)  At

oral argument, Plaintiff's counsel argued that discovery was needed in order to name specific

promotions that Plaintiff could not apply for due to Defendant's discriminatory conduct.  (Oral

Arg. Tr. 15:6–12 ("[W]e strongly believe that the discovery process will reveal evidence of the

fact that there are Caucasians being promoted into higher titles . . . as well as managerial

positions, in which [P]laintiff is not afforded the same opportunity as the others in order to apply

for and be qualified for these positions.").)  When the Court invited Plaintiff's counsel to list any

positions after August 25, 2016, that Plaintiff could not apply for as a result of his disciplinary

status, counsel stated that she spoke to her client about that issue and that he "was not able to

identify any specific positions or anyone that was promoted into these specific positions."  (*Id.* at

16:24–17:8, 18:22–25; *see also id.* at 23:7–10 ("We do not have a list of positions that [P]laintiff

could have applied to or that others were promoted into.").)

To establish a prima facie case of employment discrimination based on a failure to promote claim under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he applied and was qualified for a position for which the employer was seeking applicants, (3) he was not selected for the position, and (4) the failure to promote occurred under circumstances giving rise to an inference of discriminatory intent.  *Duckett v. Foxx*, 672 F. App'x 45, 47 (2d Cir. 2016) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)); *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015); *see also Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 124–25 (2d Cir. 2012); *Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012); *Lomotey v. Conn.-Dep't of Transp.*, 355 F. App'x 478, 480 (2d Cir. 2009); *Sandor v. Safe Horizon, Inc.*, No. 08-CV-4636, 2011 WL 115295, at *8 (E.D.N.Y. Jan. 13, 2011).  Claims under the NYSHRL and section 1981 are evaluated under the same framework.  *Gachette v. Metro-N. Commuter R.R. Co.*, 804 F. App'x 65, 67 (2d Cir. 2020) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL)); *Khanna v. MUFG Union Bank, N.A.*, 785 F. App'x 15, 15 (2d Cir. 2019) (addressing "all of [the plaintiff's] claims together because '[t]he substantive standards applicable to claims of employment discrimination under Title VII, [] are also generally applicable to claims of employment discrimination brought under § 1981, the Equal Protection Clause, and the NYSHRL . . . .'" (second and third alterations in original) (quoting *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010))).

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims," and NYCHRL claims are construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472 (2011)).  "[A] plaintiff's discrimination claims under both the

NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII," *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)), but in applying that test, courts in this Circuit "keep[] 'the NYCHRL's more liberal standards in mind.'" *Anderson v. N.Y.C. Health & Hosps. Corp.*, No. 16-CV-1051, 2020 WL 2866960, at *13 (S.D.N.Y. Mar. 2, 2020) (quoting *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 679 (S.D.N.Y. 2012)), *report and recommendation adopted*, 2020 WL 1528101 (S.D.N.Y. Mar. 31, 2020); *see also Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 265 n.15 (E.D.N.Y. 2013) ("[C]ourts in this [C]ircuit have yet to adopt a test for analyzing failure to promote claims under the broader and more liberal NYCHRL." (quoting *Davis-Bell*, 851 F. Supp. 2d at 679)).[8]

At the pleading stage, a plaintiff does not need to prove every element of the prima facie case, but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (footnote omitted); *see Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015); *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (per curiam). "[T]he prima facie case is an evidentiary standard, and not a pleading requirement; therefore, a plaintiff need not *allege* a prima facie case to survive a motion to dismiss his discrimination claim." *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *5 (S.D.N.Y. Sept. 30, 2016) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Thus, a plaintiff

---

[8] In June of 2019, New York State amended the NYSHRL, "the effect of which is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also* A8421/S6577 (as amended by S6594/A8424). Because the amendments apply to claims accruing after October 11, 2019, *see Wellner*, 2019 WL 4081898, at *5 n.4; A8421/S6577 (as amended by S6594/A8424), the date that the amendments go into effect, they do not apply to Plaintiff's NYSHRL claims.

need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which he brings his claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 306, 311).

Plaintiff contends that Defendant failed to promote him because of his race, a protected class, *see* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employment discrimination on the basis of race and color), and has adequately alleged that he is a member of a protected class. (Am. Compl. ¶ 73.) However, Plaintiff fails to identify any relevant positions for which he could have been considered and therefore fails to state a claim.

To give plausible support to the second element of the prima facie case at the motion to dismiss stage, a plaintiff must ordinarily "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998); *see also Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (granting motion to dismiss failure to promote claims because the plaintiffs' "general assertions that they were ineligible to apply for promotions [were] insufficient to state plausible . . . claims," as they did not allege "that they were interested in a promotion or that there was an open position to which they could have (or would have) applied" (footnote omitted)); *Williams v. City of New York*, No. 11-CV-9679, 2012 WL 3245448, at *6 (S.D.N.Y. Aug. 8, 2012) (holding that the plaintiff did not state a failure to promote claim because he did not allege that he applied for or was rejected from any position); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 414 (S.D.N.Y. 2012) (same). However, "a plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993) (citing *Int'l Bhd. of*

*Teamsters v. United States*, 431 U.S. 324, 364–67 (1977)); *see also Thelwell v. City of New York*, 733 F. App'x 561, 563 (2d Cir. 2018). Where an application would be futile, a plaintiff can instead "allege the specific positions to which [he] would have applied had the alleged discriminatory practices not existed." *Brown*, 163 F.3d at 711.

Plaintiff alleges that applying for a promotion would have been futile because minority employees are typically not selected for sponsorship inside the department and because he is continuously placed on a probationary status that bars him from applying for promotions outside the department. (SAC ¶¶ 36, 46, 49.) Accordingly, Plaintiff has plausibly alleged at the pleading stage that applying to be promoted would have been a "futile gesture." *Int'l Bhd. of Teamsters*, 431 U.S. at 366.

However, Plaintiff must still allege specific promotion opportunities that he would have sought had application not been futile. *See Brown*, 163 F.3d at 711 ("Accepting as true [plaintiff's] bare allegation that she ceased applying after 1995 for specific positions because such application would have been futile, [the plaintiff] has failed to allege the specific positions to which she would have applied had the alleged discriminatory practices not existed."); *Barrett*, 39 F. Supp. 3d at 442–43 (explaining that, although the plaintiff alleged that her manager's words and actions implied that applying to a regional sales trainer position would be futile, she still did not state a claim because "she d[id] not allege that she would have been interested in [that] (or any other) position or that the position was open between the time her manager made this comment and the time [the plaintiff] left the [c]ompany").

Plaintiff fails to allege specific positions he would have applied for within the limitations period. Because Plaintiff has failed to identify the position or positions that he would have applied to had application not been futile, the Court cannot infer that there were positions for

which Plaintiff would have applied during the relevant time period. *See Barrett*, 39 F. Supp. 3d at 442 ("[I]t is difficult to say that a plaintiff was injured with respect to a promotion if there were not any open positions to which [he] could have been promoted or in which [he] would have been interested"). Moreover, Plaintiff also has not alleged that he expressed to Defendant his interest in being considered for any positions. *See id.* (noting that expressing interest in a promotion gives the defendant notice); *Taylor v. City of New York*, 207 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) (holding that the plaintiff's failure to promote claim failed because the plaintiff "merely aver[red] that she 'made numerous *inquiries* related to the possibility of a promotion [to the positions in question] and each time she was denied because she is a woman'" and that general expression of interest in a promotion did not excuse her from the specific-application requirement); *McCalla v. City of New York.*, No. 15-CV-8002, 2017 WL 3601182, at *49 (S.D.N.Y. Aug. 14, 2017) ("[T]he [specific application] requirement ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, [or] the plaintiff's willingness to serve in them . . . ." (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004))).

Further, even construing the facts in the light most favorable to Plaintiff to allege that at least some intradepartmental promotions are informally filled through a sponsorship system, (SAC ¶ 38), Plaintiff nevertheless fails to point to any positions that he could have been informally considered for within the relevant time period. *See Brown*, 163 F.3d at 710 (noting that where an employer fills open positions through informal means, "a specific application [may be] a quixotic requirement"); *see also Digilov v. JPMorgan Chase Bank, N.A.*, No. 13-CV-975, 2015 WL 685178, at *11 (S.D.N.Y. Feb. 18, 2015) ("There is some tension among Second

14

Circuit precedents on the specific application rule regarding the extent to which a *formal* application — and not merely a specific-but-informal one — is required." (first citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004); and then citing *Petrosino v. Bell Atl. Corp.*, 385 F.3d 210, 226 (2d Cir. 2004))).  Plaintiff alleges that supervisors "normally" sponsor employees for promotions within a department and "initiate the promotion process" and also alleges that employees can apply for posted positions in different departments.  (SAC ¶¶ 38–39.) Construing this description as setting forth an informal process that excuses the need for Plaintiff to have applied for a specific position within his department, Plaintiff still does not point to any positions Defendant staffed informally during the relevant time period for which he could have been considered.  Although the application requirement may be excused in a "narrow" set of circumstances where "the vacancy at issue is not posted," *see Petrosino*, 385 F.3d at 227, Plaintiff does not allege any vacancy, not even an informally filled vacancy that he learned of after it was filled.[9]

Plaintiff's failure to identify specific positions into which he was not promoted is also fatal to his NYCHRL claim.  *See Brown v. Montefiore Med. Ctr.*, No. 18-CV-3861, 2019 WL 4454230, at *6 (S.D.N.Y. May 8, 2019) (holding that the plaintiff failed to state a plausible failure to promote claim under the NYCHRL where she stated that she did not receive a

---

[9]  The Court notes that Plaintiff lists eleven individuals who were allegedly promoted to supervisory or managerial positions between 2012 and 2016.  (SAC ¶ 36.)  The Court further notes that this time period includes dates on or after August 25, 2016 (for the Title VII claim) and on or after August 22, 2016 (for all other claims) when Plaintiff's claims are not time-barred or barred by *res judicata*, and also notes that some individuals were likely promoted to fill open positions, whether formally or informally staffed.  However, because it is Plaintiff's burden to give "plausible support to the reduced requirements" of a prima facie case, *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), and because Plaintiff's counsel denied at oral argument that Plaintiff knew of any vacancies during the period at issue, (*see* Oral Arg. Tr. 18:22–25, 23:7–10), the Court does not infer the existence of a relevant vacancy from Plaintiff's list of employees promoted by Defendant.

promotion but did not "identify the job title of the position or the job criteria," state that she was qualified, or "state whether the position remained open after she inquired about it or whether the position was filled and, if so, by whom"), *report and recommendation adopted*, 2019 WL 3282927 (S.D.N.Y. July 22, 2019); *Anderson*, 850 F. Supp. 2d at 414 (noting that the dismissal of failure-to-promote claims under the NYCHRL is warranted where the plaintiff "did not allege any specific instance where the [defendants] refused to promote him to a position for which he applied and for which he was qualified" (quoting *Deshpande v. TJH Med. Servs., P.C.*, 861 N.Y.S.2d 697, 700 (App. Div. 2008), *abrogated on other grounds by Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448 (2014))).

Accordingly, because Plaintiff has failed to identify any specific positions to which he would have applied or could have been informally considered to fill, he has failed to state a failure to promote claim and the Court grants Defendant's motion as to this claim.

In addition, because Plaintiff has not corrected this deficiency after two opportunities to do so, and when asked, counsel stated that Plaintiff was not able to identify any relevant vacancies, the Court denies leave to further amend this claim.  *See Greifman v. Client Servs., Inc.*, No. 20-CV-1781, 2021 WL 1828076, at *9 (S.D.N.Y. May 7, 2021) ("In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." (citing *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2019))); *Youngblood v. City of New York*, No. 15-CV-3541, 2017 WL 3176002, at *6 (S.D.N.Y. July 24, 2017) (dismissing *pro se* complaint without leave to amend after second amended complaint); *Kelly v. Ulster County*, No. 12-CV-1344, 2013 WL 3863929, at *6 (N.D.N.Y. July 24, 2013) (dismissing *pro se* complaint without leave to amend after three prior opportunities to amend); *George v. Pathways to Hous., Inc.*, No.

10-CV-9505, 2012 WL 2512964, at *7 (S.D.N.Y. June 29, 2012) (dismissing *pro se* complaint without leave to amend after two prior opportunities to amend); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that "repeated failure to cure deficiencies by amendments previously allowed" is reason to deny leave to amend).

### c. Plaintiff has sufficiently alleged a retaliation claim

Defendant argues that Plaintiff does not point to any event that gives rise to a retaliation claim that is not time-barred or barred by *res judicata*. (Def.'s Mem. 11–14.)

Plaintiff argues that Defendant retaliated against him after he engaged in the protected activities of filing EEOC charges in 2012 and 2017, and filing *Hunt I* in August of 2016, by issuing disciplinary sanctions that continue to block him from applying for a promotion. (Pl.'s Opp'n 9–11.)

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a); *Green v. Mount Sinai Health Sys.*, 826 F. App'x 124, 125 (2d Cir. 2020) ("Title VII prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015))). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Title VII retaliation claims are "evaluate[d] . . . using the three-step framework outlined in *McDonnell Douglas*." *Russell v. N.Y. Univ.*, 739 F. App'x 28, 32 (2d Cir. 2018) (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)). Under the framework,

the plaintiff must first establish "a *prima facie* case of retaliation." *Id.* (quoting *Hicks*, 593 F.3d at 164). If the plaintiff sustains this initial "*de minimis*" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164). "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Id.* (quoting *Ya-Chen Chen*, 805 F.3d at 70)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91).

The same standard applies to retaliation claims under the NYSHRL. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). However, NYCHRL retaliation claims are analyzed under a different, more lenient standard. *See Mihalik*, 715 F.3d at 112 ("[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action" (first citing *Albunio*, 16 N.Y.3d at 479; and then citing *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 58 (App. Div. 2012))).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage the allegations need only give "plausible support to the reduced prima facie requirements . . . ." *Duplan*, 888 F.3d at 625. "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the]

18

defendants discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)). If a plaintiff makes that showing at the motion to dismiss stage, a court does not proceed to the second step of the *McDonnell Douglas* framework. *Littlejohn*, 795 F.3d at 316 ("As with [the] analysis of [a] disparate treatment claim, the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."); *Burgos v. City of New York*, No. 18-CV-1150, 2019 WL 1299461, at *9 (S.D.N.Y. Mar. 21, 2019) (declining to consider purported legitimate, non-retaliatory explanation for adverse employment action because "that is an issue to be decided on summary judgment, not at the motion to dismiss stage" (quoting *Robinson v. Gucci Am.*, No. 11-CV-3742, 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012))). "'[T]he standard for an 'adverse employment action' in a retaliation claim . . . is not as demanding as it is in a discrimination claim.'" *Bowman v. N.Y. State Hous. & Cmty. Renewal*, No. 18-CV-11596, 2020 WL 1233701, at *7 (S.D.N.Y. Mar. 13, 2020) (quoting *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014)). "An employer's action can be materially adverse under a retaliation claim 'even if the challenged action does not affect the employee's compensation, terms, conditions, or privileges of employment' and thus would not be materially adverse for purposes of a discrimination claim." *Id.* (quoting *Cerni. v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016)); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) ("The proper question for a retaliation claim is 'whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination.'" (first citing *Kessler v. Westchester Cnty Dept. of Social Servs.*, 461 F.3d 199, 209 (E.D.N.Y. Mar. 26, 2020); and then

citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006))).

### i.   Participation in a protected activity

Plaintiff engaged in protected activity by filing the 2012 EEOC charge and *Hunt I*,

establishing the first element of a prima facie case.[10]  *See Eyuboglu v. Gravity Media, LLC*, 804

F. App'x 55, 58 (2d Cir. 2020) (EEOC charge (citing *Jute v. Hamilton Sundstrand Corp.*, 420

F.3d 166, 173 (2d Cir. 2005))); *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013)

(lawsuit).

### ii.   Defendant's knowledge of the protected activity

Plaintiff cannot establish the second element of a prima facie case — his employer's

knowledge — as to his 2012 EEOC charge but has established this element based on the filing of

*Hunt I*.

### 1.   2012 EEOC charge

The SAC alleges that Plaintiff "filed a discrimination charge against Defendant with the

EEOC" in February of 2012, and that "[f]ollowing [Plaintiff's] complaint, Defendant engaged in

a pattern of retaliatory actions," (SAC ¶¶ 45–46), but does not contain any allegation that

Defendant knew of the EEOC charge before the retaliatory action began or facts that could

support an inference of corporate knowledge of the EEOC charge.  *See Tillman v. N.Y.C. Dep't*

*of Hum. Res. Admin.*, No. 20-CV-1153, 2021 WL 1089647, at *8 (S.D.N.Y. Mar. 22, 2021)

("[The] [p]laintiff's claim fails because she does not allege that [the defendant] or any individual

was aware of her EEOC charge after it was filed." (first citing *Smith v. City of New York*, No. 12-

---

[10]  Although Plaintiff engaged in protected activity in June of 2017 when he filed another
charge with the EEOC, he does not allege any specific retaliatory acts that began after he filed
the 2017 EEOC charge.  Nor does he describe any specific instances after 2017 in which
Defendant failed to promote him.  Plaintiff therefore fails to state a retaliation claim based on the
filing of the 2017 EEOC charge.

CV-3250, 2013 WL 1903856, at *5 (S.D.N.Y. May 8, 2013); and then citing *Eyuboglu*, 804 F. App'x at 58)); *Antrobus v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-7449, 2021 WL 964438, at *14 (S.D.N.Y. Mar. 15, 2021) (explaining that for a retaliation claim to survive a motion to dismiss, a plaintiff must allege facts "that would permit the [c]ourt to infer [the] [d]efendant's knowledge of her [EEOC charge]"); *Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18-CV-1847, 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019) ("[C]ourts have held employers cannot retaliate for conduct of which they are unaware.").[11]

## 2. *Hunt I*

However, Plaintiff has shown his employer's knowledge of *Hunt I*. The SAC does not allege that any individual knew of Plaintiff's lawsuit, but "[n]othing 'more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" *Summa*, 708 F.3d at 125–26 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)). Defendant appeared in *Hunt I* and moved to dismiss, and Plaintiff has therefore established that Defendant was aware of the suit. *See id.* at 125 (holding that the plaintiff had established the second prong of a prima facie retaliation case because "at a minimum, the [defendant university's] legal office knew about the instant litigation"); *Heckstall v. Metro. Transp. Auth.*, No. 19-CV-3566, 2021 WL 1226443, at *6 (S.D.N.Y. Apr. 1, 2021) ("[F]or purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of [his] protected activity to establish the knowledge prong of the prima facie case." (alterations in original) (quoting *Zann*

---

[11] The Court declines to grant Plaintiff leave to amend this claim because he has already had sufficient opportunity to amend. *See, e.g.*, *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (affirming the court's denial of leave to amend where the plaintiff had two previous opportunities to amend); *Youngblood v. City of New York*, No. 15-CV-3541, 2017 WL 3176002, at *6 (S.D.N.Y. July 24, 2017) (dismissing *pro se* complaint without leave to amend after second amended complaint).

*Kwan v. Andalex Grp.*, 737 F.3d 834, 844 (2d Cir. 2013))).

### iii.   Adverse employment action

Defendant argues that the SAC "fails to identify a single adverse employment action occurring on or after August 25, 2016." (Def.'s Mem. 3.)

Plaintiff alleges that he was provided less time to study for the December of 2016 examinations than policy provided, that there were irregularities in how the December of 2016 Construction test was proctored, and that he was denied the opportunity to retest on the same terms as other employees. (SAC ¶¶ 48–61.) He also alleges that he was refused overtime on at least one occasion during this period, was not provided remediation with instruction during the typical timeframe, and was assigned to inapplicable training alongside other employees Plaintiff himself had trained before finally being sent to proper remediation instruction in March of 2017. (*Id.* ¶¶ 56–58.) Plaintiff further contends that the testing irregularities and the referral to irrelevant remedial training resulted in an approximately seven-month interruption in his career, and had a lasting effect because "he was reinstated to field duty without an [o]perator [q]ualification," directly affecting his chances for promotion. (*Id.* ¶ 61.)

Adverse employment actions are actions that "could well have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination." *Davis-Garett*, 921 F.3d at 44 (first quoting *Kessler*, 461 F.3d at 209; and then citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57). "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (citing *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

22

Reassignment to "responsibilities and duties that are less desirable than others," even where the less-desirable duties are part of the same job description, can be materially adverse, "depend[ing] on the circumstances of the particular case." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 70–71 (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)) (holding that a jury could reasonably conclude that the plaintiff's reassignment from forklift operator duty to standard laborer tasks was an adverse employment action). "A demotion or being 'relegated to work normally performed by more junior employees' can constitute an adverse action . . . ." *Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-675, 2021 WL 1225875, at *27 (S.D.N.Y. Mar. 31, 2021) (quoting *Wilkinson v. New York State*, No. 18-CV-4148, 2019 WL 5423573, at *13 (E.D.N.Y. Oct. 22, 2019)).

Plaintiff has adequately alleged at the pleading stage that, when considered in the aggregate, (1) the way he was assigned to take the December of 2016 Operator Qualification exam and the way it was proctored, (2) his assignment to unnecessary Construction remediation and other irrelevant, overly basic remedial training, (3) the denial of an opportunity to retake the exam on the same schedule as other employees, (4) his return to the field seven months later without his operator qualification, affecting his chances for promotion, and (5) the denial of overtime on one occasion were adverse employment actions.

Plaintiff's allegation that he was required to take the Operator Qualification exam under more challenging conditions than company policy provided — with less time to study, with the order of the exam sections switched at the last minute, with differences in proctoring, and with later loss of records, (SAC ¶¶ 56, 58) — constitutes an adverse action under the more lenient retaliation standard when those acts are considered in aggregate. *See Leach v. Univ. at Buffalo Pediatric Assocs., Inc.*, No. 20-CV-1836, 2021 WL 1723129, at *10 (W.D.N.Y. Apr. 30, 2021)

(finding an adverse employment action where the plaintiff alleged that, after filing an EEOC charge "[the defendant] would not allow her to retrieve her possessions from her office and delayed providing her prospective employer with the paperwork needed for her to begin a new job," distressing her and preventing her from working "for a period of time" amounting to several months); *Anderson*, 2020 WL 2866960, at *28 (assuming for purposes of a prima facie case that the combined conduct of "denying [the plaintiff] training . . . and vacation days . . .; involuntarily transferring him . . . , giving him more work than others in [his unit], denying him the ability to work with the substance abuse community, and denying him a transfer out of the [u]nit or to another hospital within the . . . system; threating to discipline him for attendance issues; and failing to investigate his claims of discrimination" were adverse actions, although it was "questionable whether some of the conduct [the plaintiff] points to would be reasonably likely to deter a person from engaging in protected conduct").  In addition, Plaintiff alleges that Defendant's actions had real consequences for him — failing the exam, which would have required remedial training even absent the other acts by Defendants discussed below — and that Defendant's administration of the exam was contrary to company policy.  *See Harewood v. N.Y.C. Dep't of Educ.*, No. 18-CV-5487, 2021 WL 673476, at *31 (S.D.N.Y. Feb. 22, 2021) (holding that the plaintiff did not state a prima facie retaliation claim where she received a disciplinary notice based on conduct before she engaged in protected activity, there was an obligation to send the notice, and "there were no consequences to [the] [p]laintiff").

Plaintiff's allegation that he received remedial Gas Distribution Services training far below his level of knowledge, and that he was assigned to Construction remediation training despite passing that exam, could be plausibly viewed as part of a "pattern of discrimination and retaliation designed to make [Plaintiff] look bad." *Vega*, 801 F.3d at 91 (finding an adverse

employment action where "failing to notify [the plaintiff] of a curriculum change could have adversely affected him by, for example, making him appear unprepared or ineffective both to his students and for his up-coming teacher evaluation").  Plaintiff's time in remedial training affected his reputation at work as he alleges that the other participants in this training "expressed surprise" that Plaintiff had been assigned to the training because that assignment was inconsistent with Plaintiff's "widely recognized and highly regarded" skills.  (SAC ¶ 57.) Defendant's actions also affected Plaintiff's earning potential and opportunities for advancement because he was unable to retake the test on the same terms as other employees and recover his operator qualification, which affected his "qualifications and financial compensation."  (SAC ¶ 60.)[12]  *See Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) (holding that a plaintiff stated a First Amendment retaliation claim where "her reputation, opportunities for advancement and earning potential [were] impaired" by her employer's allegedly retaliatory actions); *Gallo v. Second Taxing Dist. of City of Norwalk Operating Under Name of S. Norwalk Elec. & Water*, 507 F. Supp. 2d 164, 174 (D. Conn. 2007) ("To determine whether a demotion has occurred, the question is whether the transfer involves a dramatic downward shift in skill level required to perform job duties.  Other considerations include allegations of harm to [the] plaintiff's reputation, limited opportunities for advancement, and reduced earning potential." (citing *Bernheim*, 79 F.3d at 325)).

Plaintiff's allegation that he was deprived of the opportunity to earn overtime on one occasion is an allegation of an adverse employment action because the loss of overtime affected

---

[12]  While in remediation, Plaintiff was not in the field performing his regular job.  (*See* SAC ¶ 61 ("Defendant's discriminatory actions caused [Plaintiff] to be overlooked for approximately seven months at which point, he was reinstated to field duty without an Operator Qualification.").)

his income. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014) ("A deprivation of the opportunity to earn overtime can be considered a materially adverse employment action." (collecting cases)); *Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) (explaining that the "plaintiff could [have been] subject to adverse employment action where he lost income because of lost overtime" (citing *Little v. Nat'l Broadcasting Co.*, 210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002))); *Grana v. Potter*, No. 06-CV-1173, 2009 WL 425913, at *11–12 (E.D.N.Y. Feb. 19, 2009) (denying summary judgment on retaliation claim that included an allegation the plaintiff was denied overtime in one instance).

Accordingly, Defendant's actions in aggregate throughout the seven month period during which Plaintiff was undergoing various forms of remedial training, was assigned to the wrong remedial classes, was not permitted to retake examinations on the same terms as other employees, and was away from the field, together constitute an adverse employment action.

### iv.  Inference of discrimination

A plaintiff alleging retaliation can show a causal connection "either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct;[13] or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon*, 232 F.3d at 117).  A gap of seven months between a protected activity and an alleged retaliatory act can be "sufficient to infer causation," *Summa*, 708 F.3d at 129, and eleven months "is, to say the least, at the very

---

[13]  Plaintiff has not alleged disparate treatment compared to similarly situated employees. Although he states that other employees were able to retake the examination under terms not offered to him, (SAC ¶ 56), he does not allege that those other employees were similarly situated or plead facts suggesting that they were.

26

outer limit of the amount of time that is considered sufficient to establish causation," *Cronin v. St. Lawrence*, No. 08-CV-6346, 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009), but a gap of twenty months "suggests, by itself, no causality at all," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001).

Plaintiff filed *Hunt I* in February of 2016 and filed an amended complaint on August 22, 2016. (*Hunt I*; Am. Compl.) Defendant notified Plaintiff on December 6, 2016, that he was due to take an Operator Qualification test, and it was administered one week later. (SAC ¶ 51.) Plaintiff was then subjected to a series of acts that when viewed in the aggregate, plausibly allege adverse employment actions. According to the allegations in the SAC, the first of those acts, following the filing of *Hunt I* was his assignment in December of 2016 to Construction remediation even though he passed the Construction exam — approximately four months after the filing of *Hunt I*. (SAC ¶ 55.) Thus, the adverse employment actions alleged by Plaintiff are sufficiently close in time to *Hunt I* to support an inference of retaliation. *See Summa*, 708 F.3d at 129; *Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 274 (E.D.N.Y. 2015) (finding a causal connection based on time between protected activity and the first of a series of events that were considered an adverse employment action in aggregate). The temporal proximity of this series of events suffices to support a causal connection, at least at the pleading stage, between the filing of *Hunt I* and the adverse employment actions described above.[14]

---

[14]  Plaintiff also alleges that he was disciplined so as to render him continuously on probation and ineligible to apply for a promotion. (Am. Compl. ¶ 44.) While Plaintiff does not specify when this practice began, he alleges that his probationary status started before and continued during *Hunt I*, and that Defendant continued to place him on probation through the filing of the SAC. (*Id.* ¶¶ 46, 64.) Because Defendant began placing Plaintiff on probationary status before he engaged in any protected activity, there is no inference of retaliation between the protected activity and Defendant's action of placing Plaintiff on probation. *See Hernandez v. N.Y.C. Dep't of Sanitation*, No. 18-CV-1808, 2018 WL 5447540, at *4 (S.D.N.Y. Oct. 29, 2018)

###### v. Defendant's legitimate reason for its actions

Defendant argues in its moving papers that Plaintiff failed to state a prima facie case, (Def.'s Mem. 9–13), and in its reply to Plaintiff's response to the motion, Defendant argues that Plaintiff concedes that he failed multiple parts of the exams and "does not allege that other employees who failed multiple exam sections were not required to undergo remediation training," (Def.'s Reply 11–12).  While Defendant may have a legitimate, nondiscriminatory reason for Plaintiff's treatment, at the motion to dismiss stage, the Court will not consider Defendant's argument.  *See Littlejohn*, 795 F.3d at 316; *Burgos*, 2019 WL 1299461, at \*9 (declining to consider purported legitimate, non-retaliatory explanation for adverse employment action because "that is an issue to be decided on summary judgment, not at the motion to dismiss stage" (quoting *Robinson*, 2012 WL 259409, at \*6)).

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss in part and denies it in part.  The Court dismisses (1) Plaintiff's failure to promote claim and (2) Plaintiff's retaliation claim, except for the arguments that Defendant retaliated against him for filing *Hunt I* based on the aggregate of (a) the manner in which Defendant assigned him to take the December

---

(holding at the motion to dismiss stage that plaintiff did not state a retaliation claim because "negative treatment" that occurred "before the alleged protected activity" was "sufficiently significant to sever the causal link" between protected activity and later negative treatment); *Floyd v. S. Westchester BOCES*, No. 14-CV-5842, 2015 WL 5459992, at \*9 (S.D.N.Y. July 31, 2015) (holding at the motion to dismiss stage that "[b]ecause plaintiff alleges defendant discriminated against him in several ways, including by giving him a negative evaluation and undesirable work assignments, *before* he filed charges with the EEOC, the [c]ourt cannot conclude plaintiff's negative performance evaluation . . . and assignment to the [undesirable] Rye Lake Campus" after he filed EEOC charges "give rise to a plausible inference of retaliation"); *Daniels v. Dalton*, No. 95-CV-209, 1995 WL 643358, at \*2 (W.D.N.Y. Oct. 16, 1995) (holding, in granting the defendant's motion to dismiss, that an employee who "was reprimanded in the same way both before and after engaging in . . . protected activity" did not state a claim).

of 2016 Operator Qualification exam and the way it was proctored, (b) his assignment to

unnecessary Construction remediation and other irrelevant, overly basic remedial training, (c) the

denial of an opportunity to retake the exam on the same schedule as other employees, (d) his

return to the field seven months later without his operator qualification, affecting his chances for

promotion, and (e) the denial of overtime on one occasion.

Dated:  August 7, 2021
       Brooklyn, New York

                     SO ORDERED:


                     _____s/ MKB_____
                     MARGO K. BRODIE
                     United States District Judge